UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOVANA MARJANOVIC,

                              Plaintiff,            Case # 19-CV-246-FPG

v.                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

      Plaintiff Jovana Marjanovic brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 9. For the reasons that follow, the Commissioner's motion is DENIED, Marjanovic's motion is GRANTED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

      In October 2015, Marjanovic applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 69. She alleged disability since June 2013 due to left shoulder impairment, cervical impairment, lower lumbar pain, and depression. *Id.* On March 21, 2018, Administrative Law Judge Maria Herrero-Jaarsma ("the ALJ") issued a decision finding that Marjanovic is not

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 4.

1

disabled. Tr. 13-26. On January 24, 2019, the Appeals Council denied Marjanovic's request for review. Tr. 1-3. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the

claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Marjanovic's claim for benefits under the process described above. At step one, the ALJ found that Marjanovic had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ found that Marjanovic has, among other things,

severe impairments of left shoulder rotator cuff tear, degenerative disc disease of the cervical and lumbar spine, and status post cervical discectomy and fusion. Tr. 15.  At step three, the ALJ found that her impairments do not meet or medically equal any Listings impairment.  Tr. 18.

Next, the ALJ determined that Marjanovic retained the RFC to perform sedentary work with additional restrictions.  Tr. 18-19.  At step four, the ALJ found that Marjanovic could not perform any past relevant work.  Tr. 23.  At step five, the ALJ relied on the testimony of a vocational expert ("VE") and found that Marjanovic can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 24-25.  Accordingly, the ALJ concluded that Marjanovic is not disabled.  *Id.*

**II.  Analysis**

Marjanovic argues, *inter alia*, that the ALJ erroneously relied on the VE's testimony without resolving an evidentiary conflict relating to her ability to reach overhead with her left arm. Because the Court agrees, it need not address, and takes no position on, Marjanovic's other arguments.

Some background may be helpful.  The ALJ concluded that Marjanovic could perform less than a full range of sedentary work.  Tr. 18-19.  Due to Marjanovic's neck, back, and left-arm issues, the ALJ concluded that she could only "engage in frequent, but not constant, bilateral reaching (including overhead, in front, and/or laterally) *with overhead reaching restriction for the left upper extremity*."  Tr. 18-19, 21-22 (emphasis added).  In the decision, the ALJ did not explain what she meant by "overhead reaching restriction for the left upper extremity."

However, based on the hearing testimony, the Court can surmise that by "overhead reaching restriction for the left upper extremity," the ALJ meant a limitation that Marjanovic could only occasionally reach overhead with her left arm.  *See* Tr. 63.  Thus, while not spelled out in the

4

decision, the ALJ appears to have intended to limit Marjanovic to frequent reaching with both arms but only occasional overhead reaching with her left arm.

At the hearing, the VE opined that, even if Marjanovic could only perform a reduced range of sedentary work—including frequent reaching bilaterally except for occasional overhead reaching with the left arm—she could still perform three jobs: order clerk, document preparer, and touch-up screener. Tr. 64. The VE also opined that a limitation to "occasional reaching . . . *bilaterally* would preclude work at the sedentary exertional level." Tr. 65 (emphasis added). Taking these statements together, the VE appears to have taken the position that the jobs of order clerk, document preparer, and touch-up screener required that an individual be able to frequently reach with one arm in all directions; it was irrelevant that the individual could only occasionally reach overhead with the other arm. The VE stated that the information she provided was consistent with the Dictionary of Occupational Titles ("DOT"). Tr. 66.

The ALJ adopted the VE's position in the decision, concluding that Marjanovic could perform the jobs of order clerk, document preparer, and touch-up screener. Tr. 24-25.

Marjanovic argues that there is a conflict between the VE's testimony and the DOT's descriptions for these jobs. She notes that the identified jobs require "reaching in all directions on a 'frequent' basis." ECF No. 8-1 at 24. To Marjanovic, this implies that a person would need to be able to frequently reach with both arms and in all directions, including overhead. *See id.* The Commissioner disagrees and interprets the DOT job descriptions to require that an individual be able to frequently reach in all directions with one arm, regardless of the capability of the other arm. *See* ECF No. 9-1 at 11.

Social Security Ruling ("S.S.R.") 00-4p, which clarifies the SSA's standards for using a VE, provides that:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ]'s duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict. The [ALJ] must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

S.S.R. 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). This Ruling "place[s] an affirmative duty on the ALJ to identify and resolve any conflict between the [VE]'s testimony and the DOT before relying on such testimony." *Patti v. Colvin*, No. 13-CV-1123, 2015 WL 114046, at *6 (W.D.N.Y. Jan. 8, 2015) (citation omitted).

*Lockwood v. Commissioner of Social Security Administration*, 914 F.3d 87 (2d Cir. 2019), is illustrative. In *Lockwood*, the ALJ included a restriction that the claimant could not reach overhead. *Lockwood*, 914 F.3d at 91. The VE testified that there were three jobs that the claimant could perform given that restriction—all of which, under the DOT, entailed "frequent reaching." *Id.* at 92 (internal quotation marks omitted). The claimant noted, however, that SSA policy defines "reaching" as "extending the hands and arms *in any direction*." *Id.* Consequently, the claimant argued that the DOT "raises a potential inconsistency with [the VE's] testimony that a claimant with a restriction on overhead reaching is capable of performing the three jobs at issue," and the ALJ erred when she failed "to probe this apparent conflict before relying on [the VE's] testimony." *Id.* The Commissioner responded that "there is no conflict between the expert testimony and the [DOT] because describing a job as requiring 'reaching' does not necessarily establish that it requires overhead reaching." *Id.*

The Second Circuit agreed with the claimant. It explained that an ALJ's duty to inquire and resolve conflicts between the VE's testimony and DOT job descriptions extends even to "non-obvious" conflicts. *Lockwood*, 914 F.3d at 92. Put differently, the ALJ must identify and inquire "into all those areas where the expert's testimony *seems to* . . . conflict with the [DOT]." *Id.* (internal quotation marks omitted).

Applying that standard to the claimant's case, the Second Circuit noted that both SSA policy and common usage suggest that "reaching" includes overhead reaching. *Id.* As a result, "[t]estimony that a claimant with overhead reaching limitations is capable of performing a job that the [DOT] describes as requiring 'reaching' . . . creates at least an *apparent* conflict that triggers the Commissioner's duty to elicit an explanation that would justify crediting the testimony." *Id.* Importantly, the Second Circuit rejected the Commissioner's argument that the term "reaching," as used in the DOT, "does not necessarily establish that it requires overhead reaching." *Id.* The court reasoned that, faced with an ambiguous term like "reaching," it was not the court's responsibility to "guess" what the identified jobs "require in reality"; rather, it was the ALJ's duty to "elicit an explanation from [the VE] as to whether those occupations actually require . . . overhead reaching." *Id.* at 93 (internal brackets omitted). Indeed, "[t]he importance of teasing out such details is precisely why the Commissioner bears an affirmative responsibility to ask about *any possible conflict* between vocational expert evidence and information provided in the [DOT]." *Id.* (internal quotation marks and brackets omitted).

As in *Lockwood*, in this case there was at least a *possible* conflict between the DOT job descriptions and the VE's testimony: the VE opined that Marjanovic could perform three jobs even though she could only occasionally reach overhead with her left arm, while the DOT states that those jobs demand frequent reaching, which is defined as extending the "arms" in "any direction."

7

*Id.* at 92 (emphases added). Given the use of the plural "arms," "reaching" could be understood to require the use of both arms. Or, perhaps it could be construed more narrowly, as the Commissioner suggests. In either case, the *Lockwood* court made clear that it is the ALJ's responsibility, not this Court's, to tease out such details. *See id.* at 93.

The Court acknowledges that this issue is a matter of some debate among courts in other circuits. *See, e.g.*, *Lamear v. Berryhill*, 865 F.3d 1201, 1206 n.4 (9th Cir. 2017) (collecting cases); *Lee v. Astrue*, No. 12-CV-84, 2013 WL 1296071, at *11 n.5 (D. Or. Mar. 28, 2013) (noting that "some courts have held that a restriction on reaching by one arm conflicts with a DOT job description requiring reaching generally" while "other courts have concluded that there is no conflict in such situations"). But, in light of *Lockwood*, the Court has little trouble concluding that it was incumbent on the ALJ to address and resolve the issue. This conclusion is also in accord with *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015), a case on which the *Lockwood* court heavily relied and which presents the exact issue Marjanovic raises. *See Pearson*, 810 F.3d at 211 ("Although the [DOT] does not expressly state that the occupations identified by the expert require frequent bilateral overhead reaching, the [DOT's] broad definition of 'reaching' means that they certainly *may* require such reaching. Comparing the [DOT] definition to Pearson's limitations, the vocational expert's testimony that Pearson could fulfill the requirements of these occupations apparently conflicts with the [DOT]. Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert as to whether these occupations do, in fact, require frequent bilateral overhead reaching."); *see also Lamear*, 865 F.3d at 1206 ("[W]e cannot determine from this record, the DOT, or our common experience whether the jobs in question require both hands, so we cannot say the ALJ's failure to inquire was harmless.").

8

In short, faced with the potential inconsistency between the VE's testimony and the DOT job descriptions, the ALJ had a duty to inquire into and resolve the issue of whether the three identified jobs required frequent bilateral overhead reaching. *See Pearson*, 810 F.3d at 211 (stating that the ALJ and VE should have addressed "exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements"). Although the ALJ's decision resolves some other conflicts between the DOT and the VE's testimony, *see* Tr. 25, it does not identify this conflict. Accordingly, remand for further proceedings is required. *See Lockwood*, 914 F.3d at 94.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED and Marjanovic's Motion for Judgment on the Pleadings (ECF No. 8) is GRANTED. This matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 23, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court